**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAUREN MILLSTEIN,

     Plaintiff,

         v.

COUNTY OF LOS ANGELES;
NORTH COUNTY CORRECTIONAL
FACILITY, AND DOES 1-100,

     Defendants.

Case No.:  2:21-cv-02623-MEMF-GJSx

**ORDER GRANTING IN PART MOTION
FOR FLSA PRELIMINARY
CERTIFICATION [58]**

     Before the Court is the (Renewed) Motion for FLSA Preliminary Certification filed by Plaintiff Lauren Millstein.  ECF No. 58.  On June 1, 2023, the Court held a hearing and took the motion under submission.  ECF No. 64. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion.

/ / /

/ / /

/ / /

1

I.    **Background**

   A.  **Factual Background**[1]

This case involves alleged violations of the Fair Labor Standards Act ("FLSA").  For two years, Plaintiff Lauren Millstein ("Millstein") was employed by the Defendant County of Los Angeles (the "County") as a non-exempt, hourly employee at the North County Correctional Facility ("NCCF").  First Amended Complaint ("FAC"), ECF No. 24, ¶ 12.  NCCF is a jail facility owned and operated by the County.  *Id.* ¶ 6.

Millstein was formally required to work eight-hour days, six days a week,[2] with shifts starting at 6:00 a.m. and ending at 2:00 p.m.  *Id.* ¶¶ 12–13.  However, in practice, Millstein was required to work more than ten hours a day and did not receive pay for all hours worked.  *Id.* ¶ 13.  She was required to perform work-related tasks such as retrieving security keys and conducting security checks one hour before her 6:00 a.m. start time.  *Id.* ¶ 13.  The County also did not pay Millstein for work performed during allotted rest breaks and meal breaks.  *Id.* ¶¶ 13–15.  Millstein's last day of work was on May 27, 2019.  *Id.* ¶ 12.

Millstein asserts a claim for failure to pay straight time and overtime wages under the FLSA.  FAC ¶¶ 24–35.  Millstein alleges "Defendants failed to pay failed to pay Plaintiff and other Class members for overtime work in violation of the FLSA."  *Id.* ¶ 27.  Millstein also alleges on information and belief that "Defendants' practice of having its employees work off the clock resulted in employees working overtime and not being paid for it. This resulted in Defendants failing to pay all the overtime wages owed to Plaintiff and Unpaid Overtime Wage Class members."  *Id.* ¶ 27.  Millstein further alleges "when Plaintiff and those similarly situated were able to take a rest breaks, they were not paid for such rest breaks as is required pursuant to 29 U.S.C. 785.18 [sic]."  *Id.* ¶ 28.  "Plaintiff and members of the Bona Fide Meal Period Class were required to continue to work during these meal periods in violation of 29 U.S.C. 785.19 [sic]."  *Id.* ¶ 29.  Finally, Millstein alleges on information and belief that "Defendants maintained and continues to maintain a policy or practice

---

[1] The facts are taken from the First Amended Complaint, ECF No. 24, except where noted otherwise.
[2] The Court notes that Millstein's declaration in support of this Motion states five to six days a week, Millstein Decl. ¶ 8, as does the Motion, Motion at 5, 12.

of requiring employees to perform various duties exceeding a [40-hour] workweek without compensation, of requiring employees to work during their meal breaks, and of not paying employees while on rest breaks." *Id.* ¶ 35.

### B. Procedural History

On March 25, 2021, Millstein filed her initial class action complaint on behalf of herself and all others similarly situated, seeking damages and injunctive relief for the County's (1) failure to pay overtime wages; (2) failure to pay for rest breaks in violation of 29 C.F.R. § 785.18, (3) failure to pay for non-duty-free meal breaks in violation of 29 C.F.R. § 785.19; and (4) unfair competition in violation of California Business and Professional Code section 17200, *et seq.* ("Compl.") ECF No. 1. The County filed its Answer on May 18, 2021. On August 9, 2021, Millstein filed her First Amended Class Action Complaint, retaining the class definitions but dropping all original claims save the failure to pay straight time and overtime wages in violation of the FLSA. FAC, ¶¶ 24–35. The County filed a Motion to Strike, seeking to strike class action allegations unrelated to a FLSA collective action on August 23, 2021, which the Court granted on June 21, 2022. ECF Nos. 27, 40.

On December 12, 2022, Millstein filed a motion for FLSA preliminary certification. ECF No. 47. On December 19, 2022, the County filed an opposition, noting that Millstein failed to meet and confer prior to filing her motion. ECF No. 50. On December 26, 2022, Millstein filed a reply. ECF No. 52. On February 21, 2023, the Court vacated the original hearing date on this motion because of the failure to meet and confer as required under Local Rule 7-3. ECF No. 53.

On March 15, 2023, the Court issued an Order as to Joint Stipulation regarding Plaintiff's Motion for FLSA Preliminary Certification, granting in part and denying in part the stipulation, and setting the briefing schedule for this renewed motion. The Court set the motion filing deadline for April 20, 2023; the opposition filing deadline for May 4, 2023; and the Reply filing deadline for May 18, 2023. ECF No. 57 at 2. The Court also set the hearing for June 1, 2023, at 10:00 a.m. *Id.* The Court reset the hearing for June 1, 2023, at 2:00 pm. ECF No. 63. The parties submitted the renewed motion and opposition. ECF Nos. 58 ("Motion"), 59 ("Opp."). Millstein filed a late reply and objections in support of the renewed motion. ECF Nos. 60 ("Reply"), 61, 62. While the reply

papers are late, the Court will nevertheless consider them.[3]  The Court provided the parties with a

written tentative ruling in advance of the hearing.

II.     **Applicable Law**

A.  **FLSA Preliminary Certification**

Under the Fair Labor Standards Act ("FLSA"), employees, on behalf of themselves, or other

"similarly situated" employees, may initiate a collective action to recover "unpaid minimum wages,

or their unpaid overtime compensation . . .  and in an additional equal amount as liquidated

damages" against an employer, including a public agency.  29 U.S.C. § 216 (b).  FLSA collective

actions are not class actions and do not follow the requirements of class actions.  *See Campbell v.*

*City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).  "[W]orkers may join a collective action if

they claim a violation of the FLSA, are 'similarly situated' to the original plaintiff, and affirmatively

opt in."  *Id.* at 1108.  "[P]articipation in the collective action is a statutory 'right' held equally and

individually by each party plaintiff, whether originally appearing in the complaint or later opting in."

*Id.* (citing 29 U.S.C. § 216(b)).

Although the FLSA does not provide a "procedure for determining whether the [collective-

action] mechanism is appropriate," courts within and outside the Ninth Circuit typically follow a

two-stage process. *Campbell*, 903 F.3d at 1108–09.  At the first stage, "plaintiffs will typically move

for preliminary certification." *Id.* at 1109 (citing 1 McLaughlin on Class Actions § 2:16; 7B Fed.

Prac. & Proc. Civ. § 1807).[4]  This preliminary certification stage is usually completed early in the

action. *Id.*  "A grant of preliminary certification results in the dissemination of a court-approved

notice to the putative collective action members, advising them that they must affirmatively opt in to

participate in the litigation." *Id.* at 1109 (citations omitted).  A denial prevents the dissemination of

---

[3] The Court will consider the late papers this time but reminds the parties to timely file their papers. The Court
notes that this appears to be at least the second time that Plaintiff has failed to comply with this Court's
standing orders.  Counsel is ordered to familiarize themselves with the current operative Standing Order and
Civil Trial Order, which can be found at ECF Nos. 34, 45. Plaintiff is admonished that any further violations
of this Court's orders will result in appropriate consequences and may trigger an Order to Show Cause why
sanctions should not be imposed.
[4] This is also referred to as "provisional" or "conditional" certification by some courts. *Campbell v. City of
Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).

any such notice and may be without prejudice. *Id.* Preliminary certification is appropriate when the collective plausibly satisfies the FLSA's 'similarly situated' requirement." *Campbell*, 903 F.3d at 1109.

When "[p]arty plaintiffs are similarly situated . . . [they] may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. Preliminary certification, to the extent it relates to the approval and dissemination of notice, is an area of substantial district court discretion. *Id.* at 1110. "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* at 1109 (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)). The level of consideration by the district court is "lenient." *Id.* (citing *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).[5] Some Courts have explained that this "require[s a showing of ] 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.*

In cases where preliminary certification has been granted, defendants may typically move to decertify the collective action on or after the close of discovery. *Campbell*, 903 F.3d at 1109. At this decertification stage—the second stage in the two-stage process—the Court may decertify the collective action—and require the plaintiffs to pursue their actions individually—"for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* (citing 1 McLaughlin on Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807).

/ / /

/ / /

---

[5] Some courts in the Central District have "required [plaintiffs] to produce 'little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy or plan.'" *Pittmon v. CACI Int'l, Inc.*, No. CV2102044CJCJEMX, 2021 WL 4642022, at *3 (C.D. Cal. Aug. 27, 2021) (quoting *Dashiell v. Cty. of Riverside*, 2015 WL 13764448, at *4 (C.D. Cal. Sept. 18, 2015)). Likewise, other courts in the Central District similarly apply a lenient standard. *See Rosario v. 11343 Penrose Inc.*, No. 2:20-CV-04715-SB-RAO, 2020 WL 8812460, at *3 (C.D. Cal. Oct. 26, 2020).

### III.    Evidentiary Objections

Given the "lenient" standard that applies at the preliminary certification stage and in light of the fact that typically the Court's analysis is "focused on a review of the pleadings," *Campbell*, 903 F.3d at 1109, this Court finds that many of the objections that would be proper at trial are premature at this stage.  The Court notes that even on a motion for summary judgment, the Court can consider evidence—regardless of form—that could be produced in a form admissible at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Nevertheless, for the avoidance of doubt, this Court will briefly describe why Millstein's objections are all overruled.

Millstein filed two objections to the declaration of Cynthia Lombardo, on hearsay grounds. Millstein has not explained why the declarant "needs to be a part of" a document for the document to not be hearsay. Objections nos. 1 and 2 are OVERRULED.

Millstein filed five objections to the declaration of Eric Metten.  Some of Millstein's evidentiary objections cite the California Evidence Code instead of, or in addition to, the Federal Rules of Evidence.  The Court will consider these objections as objections asserted under the Federal Rules of Evidence but reminds the parties that the Federal Rules of Evidence apply in federal court in this action.

With respect to objection no. 1, Millstein argues that Mr. Metten is testifying about what heard at the deposition as evidence of what Millstein's claims are.  To the extent that Millstein is specifically objecting to the portion, "[i]t is my understanding that Ms. Millstein is alleging claims of unpaid overtime in violation of the Fair Labor Standard Act ('FLSA')," (see Metten Decl. ¶ 4) this statement is not hearsay, as the declarant is testifying as to his understanding.  In addition, the statement related to "review of records regarding her employment" lays the foundation for his testimony and does not discuss the contents of the records.  Millstein's objection no. 2 is an objection to paragraph 17 of the Metten Declaration based on lack of personal knowledge and hearsay.  Metten lays the foundation for his testimony.  The objection is OVERRULED as MOOT, the Court does not rely on the challenged portion of the evidence.

Objection no. 3 is OVERRULED; Metten explains how he has obtained personal knowledge and is not making an out of court statement.  Objection no. 4 is OVERRULED; Metten laid the

foundation for the statement and does not lack personal knowledge.  Objection no. 5 is

OVERRULED as MOOT, the Court does not rely on this evidence.

### IV.  **Discussion**

Millstein seeks preliminary FLSA certification for three separate classes, specifically, an

unpaid overtime wage class, rest period class, and a bona fide meal period class.  Millstein defines

the proposed classes as follows:

> **Unpaid Overtime Wage Class**: All current and former non-exempt hourly paid
> Custody Assistant[] employees that worked at the North County Correctional Facility
> who worked over 40 hours in a workweek for the County of Los Angeles at any time
> within the three (3) years prior to filing the initial Complaint through April 10, 2023
> (the opt-in period closure date) who were not paid their overtime wages.
>
> **Rest Period Class**: All current and former Custody Assistant employees who worked
> as . . . hourly paid non-exempt employee[s] at the North County Correctional Facility
> for the County of Los Angeles, at any time within the three (3) years prior to the
> filing of this initial Complaint through April 10, 2023 (the opt-in period closure date),
> who could not take rest breaks.
>
> **Bona Fide Meal Period Class**: All current and former Custody Assistant employees
> who worked as . . . hourly paid non-exempt employee[s] at the North County
> Correctional Facility for the County of Los Angeles, at any time within the three (3)
> years prior to the filing of this initial Complaint through April 10, 2023 (the opt-in
> period closure date), who did not get bona fide meal periods.

Notice of Motion at 2.

Millstein contends that she was not paid overtime wages that she earned in violation of 29

U.S.C. §207, she was not permitted to take rest breaks in violation of 29 U.S.C. §785.18,[6] and she

was required to work during her meal period in violation of 29 U.S.C. §785.19.[7]  Motion at 4.

Millstein further contends that this case is ideally suited for collective action treatment under the

FLSA and should be preliminarily certified.  Motion 10.

The County opposes, arguing that the proposed FLSA classes are not appropriate for

collective treatment where no uniform policy exists.  Opp. at 18–19, 26–29.  The County argues that,

unless Millstein can produce *substantial evidence* that there was a common answer as to why

---

[6] Millstein miscites the regulation.  The Court reads this citation as 29 C.F.R. § 785.18.
[7] Millstein miscites the regulation.  The Court reads this citation as 29 C.F.R. § 785.19.

Millstein and the purported "similarly situated" opt-in plaintiffs worked unauthorized and unreported overtime, preliminary certification is inappropriate. Motion at 26–27 (relying on *Campbell*, 903 F.3d at 1115).

In reply, Millstein argues that County seeks to impose a higher standard than required on this motion.  Reply at 3.  Millstein further argues that it not necessary to prove a department-wide practice of conducting security checks off the clock, and that the evidence provided to the Court is sufficient at this stage.  *Id.* at 4.

At the hearing, the County argued that, because the parties had engaged in discovery, the Court should apply the analysis typically applied at the second stage—the decertification stage—rather than that typically applied at the first stage—the preliminary certification stage. The County also argued that the Court's tentative failed to consider evidence that was submitted by the County to defeat the motion.  In fact, as detailed below, the Court has considered the County's evidence, but—given the lenient standard at the preliminary certification stage—the County's evidence is insufficient to defeat the Motion. Here, the County is trying to impose a higher burden on Millstein than is appropriate on this Motion.  The County's reliance on the Ninth Circuit's discussion of "substantial evidence" in *Campbell* is misplaced. That discussion relates to the proper standard to use at the second stage—the decertification stage—on a motion for *decertification* and was proper there in light of the fact the discovery was closed.  *Campbell*, 903 F.3d at 1117–1120.  At the second stage—the decertification stage—district courts "take a more exacting look at the plaintiffs' allegations and the record" because that stage typically comes at or after the close of discovery.  *Id.* at 1109.  The substantial evidence standard used in summary judgment that the County attempts to apply is improper at this stage because discovery is ongoing.  Rather, the relevant question before the Court is simply whether there are common questions of law or fact that are material to the disposition of the FLSA claim asserted in this action.  *Campbell*, 903 F.3d at 117.

### A. Whether Preliminary Certification is Appropriate for the Proposed Unpaid Overtime Wage Class

In support of the first proposed class, Millstein argues that she is similarly situated to others such that the Court should approve the proposed notice.  Millstein provides evidence that she was

required to do perimeter checks prior to her shift and was not paid overtime wages for that work.
*See* Ex. 1 to Selik Decl., Millstein depo., 73:19–74:19; 104:24–105:6; Millstein Decl. ¶7.  Millstein
also provides evidence that at least one other employee, Joseph Bello, was also subject to the same
conduct.  Motion at 13; *see generally* Bello Decl.  In addition, at least one individual that supervised
Millstein, Sergeant Terisa River, knew that some security checks were occurring prior to custody
assistants clocking in and that those custody assistants were not getting paid for it.  Motion at 12–13;
Ex. 2 to Selik Decl., River depo., 53:19–54:25.

The County opposes, arguing that Millstein has the burden to prove there is a division-wide
policy requiring or acquiescing to off-the-clock work.  Opp. at 23, 16.  The County argues that
Millstein cannot produce any evidence of a written or unwritten division-wide policy or practice
encouraging off-the-clock work, and that there is no genuine dispute of material fact as to the
existence of a division-wide policy discouraging overtime.  *Id.*  The County argues that all of its
policies are FLSA-compliant.  *Id.* at 23–24.  In addition, the County provides evidence that it has a
policy expressly prohibiting off-the-clock work.  Ex. 1 to Appendix, MPP Section 3-02/290.20.

While the existence of the policy prohibiting off-the-clock work may be a factor against
FLSA certification,[8] Millstein alleges in the FAC that "Defendants maintained and continues to
maintain a *policy or practice* of requiring employees to perform various duties exceeding a [40-hour]
workweek without compensation, of requiring employees to work during their meal breaks, and of
not paying employees while on rest breaks."  FAC ¶ 35 (emphasis added).  That there is a *policy*
prohibiting certain conduct does not necessarily mean that the *practice* does not exist.  And the
County has pointed to no binding authority stating that the existence of a policy prohibiting off-the-
clock work bars a claim or preliminary certification.  Opp. at 24.  The Court notes that in *Campbell*,
it appears that despite having such a policy, the City did not argue that preliminary certification in
that case was improper.  *Campbell*, 903 F.3d at 1102, 1117 ("[P]reliminary certification is not

---

[8] Other district courts have found the "presence of express policies prohibiting off-the-clock work, while by
no means dispositive, tends to contradict the existence of a 'common policy' and therefore is a factor against
FLSA certification." *Martinez v. Money Source, Inc.*, No. 2:19-CV-00060-SVW-E, 2020 WL5289851, at *1
(C.D. Cal. June 9, 2020) (citing *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at
*10 (N.D. Cal. Dec. 9, 2014).)

challenged in this case[.]").  In addition, *Campbell* is distinguishable because a tacit Department-wide policy was "essential to the viability of the collective action, as it [was] the sole justification advanced for a Department-wide collective."  *Id.* at 1120 (9th Cir. 2018).  As noted above, Millstein alleged a policy *or* practice, not solely a policy.  *See* FAC ¶ 35.  Moreover, Millstein provided evidence that at least one other custody assistant that was also subjected to off-the-clock work and that at least one supervisor was aware of the practice.  *See generally* Bello Decl.; *see also* Ex. 2 to Selik Decl., River depo., 53:1–54:25.  This is sufficient evidence for preliminary certification of the unpaid overtime wage class prior to extensive discovery.  Millstein has provided plausible evidence and allegations that she is similarly situated to other employees.  Therefore, the request to preliminarily certify the first class is GRANTED.

### B.  Whether Preliminary Certification is Appropriate for the Proposed Rest Period and Bona Fide Meal Period Classes

In support of the second and third proposed classes, Millstein argues that she is similarly situated to the proposed employees such that the notice should be sent out.  Millstein argues that the meal breaks that she was provided were not bona fide meal breaks under 29 U.S.C. § 785.19[9] and thus, the County was required to pay employees when they worked during their meal breaks.  Motion at 14.  Millstein further argues that the County should have paid custody assistants overtime for the non-bon fide meal breaks where they were required to work when this caused them to work over 43 hours in a week.  *Id.* at 16; Reply at 5–6.

Millstein provides evidence that one of her duties was to provide security for inmates in the housing locations around the staff station, by monitoring four dormitories.  Ex. 2 to Selik Decl., River depo., 30:21– 32:1.  When the dormitories were at full capacity, the dormitories would house a total of about 264 – 280 inmates.  *Id.*  In her deposition, Millstein testified that she was "left alone at a station manning three different types of cells for inmates" and was not allowed to eat in the cafeteria because no one would relieve her.  Ex. 1 to Selik Decl., Millstein depo., 44:10–45:17.  Millstein also provides evidence that Mr. Bello and Mr. Wogu also had the same issues regarding

---

[9] Millstein miscites the regulation.  The Court understands that the correct citation as 29 C.F.R. § 785.19.

meal breaks.  Motion at 16–17.  Millstein does not provide specific argument related to rest breaks

2    apart from meal breaks.

3          The County opposes the preliminary certification of the proposed second and third classes.

4    First, the County argues that Millstein was compensated for meal and rest breaks regardless of

5    whether she used them.  Opp. at 20.  The County further contends that the FLSA does not require

6    employers to compensate their employees when those employees did not receive a duty-free meal

7    period.  *Id.* at 21.  The County argues that Millstein cannot conditionally certify a missed meal break

8    class for the approximately 6 of 18 Custody Assistant assignments that do not have a paid meal

9    break built into their shift because she has a paid meal and is therefore not similarly situated to them.

10   *Id.* at 23.

11         "Under the FLSA, employers must pay employees for all 'hours worked.' *See* 29 U.S.C. §§

12   206, 207 (1999); *Alvarez*, 339 F.3d 894, 902–903." *Maciel v. City of Los Angeles*, 569 F. Supp. 2d

13   1038, 1045 (C.D. Cal. 2008).  "[W]orking through an unpaid meal break would constitute 'work.'"

14   *Id.*  Here, Millstein seeks to preliminarily certify classes of hourly, non-exempt custody assistants

15   who worked at NCCF who were not permitted to take meal or rest breaks.  However, the County has

16   demonstrated that Custody Assistants like Millstein get paid whether they take their meal break or

17   not. *See* Metten Decl. ¶11; Exs. 10–12 to Appendix.  Specifically, the County provided evidence

18   that the 8-hour shift for the Staff Station Officer includes one paid 30-minute meal period and two

19   paid rest periods.  Opp. at 22, citing Metten Decl. ¶ 11; Exs. 10–12 to Appendix.  Millstein admitted

20   in her deposition testimony that she had a paid meal period whether she took it or not.  Millstein

21   Depo., 69:1–3; Ex. 44 to Appendix.  Here, while Millstein did not provide authority for the

22   proposition that she and proposed plaintiffs are entitled to overtime pay for missing lunch, in

23   *Abendschein v. Montgomery Cnty., Md.*, 984 F. Supp. 356, 366 (D. Md. 1997), the Court found that

24   the officers were entitled to overtime pay where the officers "were paid for eight hours per day and

25   not the half-hour meal period" and where they worked through lunch.  Here, however, Millstein

26   alleged in the first amended complaint that the County "by not paying Plaintiff and the other Class

27   members for the rest breaks they took, [the County] did not pay the accurate amount of wages

28   earned." FAC ¶ 32.  Millstein also alleged, "by not allowing Plaintiff and the other Class members

2 to take a duty-free meal break and requiring Plaintiff and the other Class members to work during

the meal break, Defendants failed to pay the accurate amount of wages earned." *Id.* ¶ 33.

3      These allegations as stated fail to state a FLSA violation, and therefore cannot support

4 preliminary certification.  FLSA does not require that employees be granted meal or rest breaks and

5 certainly not that they be granted paid, duty-free meal or rest breaks.  Furthermore, Millstein is not

6 similarly situated to custody assistants that do not have a paid meal or rest break built into their

7 schedule as those custody assistants would by definition be working overtime if working during their

8 breaks caused them to work over 43 hours per week.  Millstein working during her breaks does not

9 on its own cause her to work over 43 hours per week.  As a result, Millstein has not provided the

10 Court with plausible allegations and evidence demonstrating that the second and third classes should

11 be preliminarily certified.  Therefore, the request to preliminarily certify the second and third classes

12 is DENIED.

13
14
### C.  Whether the Court should Equitably Toll the Statute of Limitations for Opt-In Plaintiffs & Whether the Proposed Notice is Proper

15      Millstein argues that the Court should equitably toll the statute of limitations for opt-in

16 plaintiffs because, under section 216(b) of the FLSA, the clock is not stopped for the purpose of the

17 statute of limitations until the date the consent form of the opt-in plaintiff is filed, citing 29 U.S.C. §

18 256 and *Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 167–168 (4th Cir. 2001).  Motion at 19.

19 Millstein requests that the statute of limitations be tolled while this motion is pending and during the

20 notice period.  *Id.*[10]  Millstein argues that the proposed notice is proper and neutral and provides all

21 the required information under *Helton v. Factor 5, Inc.* 2012 WL 2428219, *6 (N.D. Cal. 2012).

22 Millstein provides a proposed notice of pendency of FLSA collective action and a proposed consent

23 to join.  Exs. 4 & 5 to Selik Decl.

24      The County argues that equitable tolling is not proper because Millstein did not exercise due

25 diligence in preserving her legal rights.  *Id.* at 31.  The County provides that to the extent the Court

26

27
28
[10] The Proposed Notice and Opt-in Consent documents had language implying that the statute of limitations started on March 25, 2018, suggesting that Millstein sought tolling from the date her original Complaint was filed.  *See* Exs. 4–5 to Selik Decl.  Her counsel clarified at the hearing that Millstein was only seeking tolling for the time that the Motion has been pending, not the entire pendency of this litigation.

considers applying equitable tolling, the Court only apply it from January 19, 2023, the date for the original hearing, to June 1, 2023.  Opp. at 31.  The County objects to the Notice, arguing that the proposed Notice of Pendency mischaracterizes the statute of limitations as starting March 25, 2018, instead of three years before the notice is mailed out.  Opp. at 29.  The County requests that the Notice should indicate that the statute of limitations starts three years before the Notice and Consent to Join are mailed.  *Id.*  The County also requests that the notice inform prospective plaintiffs that they would be required to engage in discovery and prove their own damages if they join the collective action.  *Id.* at 29.  Finally, the County objects to the portions of the notice related to the rest and meal break proposed classes.  *Id.*

With respect to the statute of limitations, Millstein argues that putative class members are likely unaware of their claims and are presumably subject to the same employment conduct as Millstein.  Reply at 6–7.  Millstein does not address the County's argument related to the discovery language.

Equitable tolling is a common law principle derived from courts in equity.  *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11 (2014) (first citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); then citing *Young v. United States*, 535 U.S. 43, 49–50 (2002); and then citing *Bailey v. Glover*, 21 Wall. 342, 349–350, 22 L.Ed. 636 (1875)).  "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Id.* at 10 (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)).  The Supreme Court noted that courts generally presume that equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute.  *Id.* at 11.

The FLSA statute of limitations is a procedural limitation that may be tolled when equity warrants.  *See Partlow v. Jewish Orphan's Home of Southern California, Inc.*, 645 F.2d 757, 761 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).  For collective actions, opt-in plaintiffs' claims are considered to be commenced from the date the consents are filed with the Court.  29 U.S.C. § 256.  Under the FLSA, the statute of limitations will run two or three years back, depending on whether the alleged violation is willful.

29 U.S.C. § 255.  Courts "have allowed equitable tolling in situations where the claimant has actively pursued his [or her] judicial remedies by filing a defective pleading during the statutory period, [footnote omitted] or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96; *see also Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).  In the context of FLSA collective actions, courts have tolled the statute of limitations for opt-in plaintiffs when named plaintiffs have successfully sought to certify collective actions and showed diligence.  *See Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1120 (C.D. Cal. 2011) (concluding that "[e]quitable tolling is justified . . . because Plaintiffs have diligently pursued their legal rights and are without fault for the delay"); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007) (granting equitable tolling after finding named plaintiffs were diligent in seeking contact information from defendants).[11]

The Court has discretionary authority in overseeing the notice process.  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–174 (1989).  It is unclear whether attorneys can ethically solicit[12] opt-in plaintiffs or whether potential opt-in plaintiffs can opt-in prior to certification and formal notice of the collective action.[13]  However, with respect to notifying potential plaintiffs, courts must "ensure that [the notice] is timely, accurate, and informative." *Hoffmann-La Roche Inc.*, 493 U.S. at 172.  "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. . . [and] must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

Here, Millstein, on behalf of potential opt-in plaintiffs, sought preliminary certification of the collective action in late 2022.  As Millstein points out in her Reply, this action was filed on March 25, 2021.  It is now June 2023, and some of the claims of opt-in plaintiffs will have expired without

---

[11] Courts have also tolled the statute of limitations during the period in which a certification motion is pending and have noted the unique procedural posture of preliminary certification. *Reyes v. Pier Enterprising Grp., Inc.*, No. EDCV152108JGBDTBX, 2017 WL 10619856, at *5 (C.D. Cal. June 9, 2017) (collecting cases).

[12] *See, e.g., Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007) (noting that it was unclear whether Plaintiff had crossed or was at a substantial risk of crossing ethical rules against solicitation).

[13] *See* Carl Engstrom, Note, *What Have I Opted Myself into? Resolving the Uncertain Status of Opt-in Plaintiffs Prior to Conditional Certification in Fair Labor Standards Act Litigation*, 96 Minn. L. Rev. 1544, 1554–55 (2012).

equitable tolling.  Millstein filed the initial motion in mid-December 2022 and this Motion was previously fully briefed by late December 2022.  ECF Nos. 47, 50, 52.  The Court previously found that Millstein failed to properly meet and confer with the County prior to filing the initial motion and took the initial hearing off-calendar.  ECF No. 53.  While Millstein properly sought to invoke the proper notice procedure by requesting preliminary certification, Millstein's failure to properly meet and confer caused a delay in the resolution of the initial motion.  Potential opt-in plaintiffs have not had notice of this suit and should not be prejudiced by Millstein's failure to properly meet and confer or the period of time it has taken for the Court to resolve this Motion, given that overall, Millstein has shown diligence. This is particularly so given that it appears that Millstein may have been barred from notifying other potential class participants while the Motion was pending, as discussed above. The Court finds that it is appropriate to toll the statute of limitations for the period of time that this preliminary certification Motion has been pending, that is from December 12, 2022, when it was originally filed, until the date that the notices are sent.  Therefore, the request to equitably toll the statute of limitations for opt-in plaintiffs is GRANTED.

With respect to the Court's authority in overseeing the notice giving process, the Court agrees that it would be proper to inform potential opt-in plaintiffs of their obligations with regards to their separate claims.  Therefore, the parties are ordered to include language in the notice informing opt-in Plaintiffs that they too would be required to engage in discovery and prove their own damages.  Likewise, the Court also agrees that the notice should be modified to reflect that the class is limited to individuals that worked at the North County Correctional Facility who worked over 40 hours in a workweek for the County of Los Angeles for three years before the date that the notice is sent, plus the tolling period.  Finally, since the Court found that Millstein did not plausibly support allegations for the second and third proposed classes, Millstein's proposed notice is now overinclusive.  The parties are ordered to meet and confer and file and email to Chambers (at MEMF_Chambers@cacd.uscourts.gov) a joint proposed notice of action removing the language concerning the second and third proposed classes and otherwise conforming to this Order, within seven (7) days of this order.

The parties are also ordered to meet and confer regarding a new Proposed Scheduling Order for this case and submit a new Proposed Scheduling Order within twenty-one (21) days of this order.

For these reasons, the Motion is GRANTED IN PART and DENIED IN PART.

## V.      Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  The Motion is GRANTED as to preliminarily certifying the first class (overtime);

2.  The Motion is DENIED with respect to the proposed second and third classes (rest and meal breaks);

3.  The Motion is GRANTED with respect to equitably tolling the statute of limitations for opt-in plaintiffs in part, starting from December 12, 2022, and DENIED with respect to permitting the notice to state or imply that the statute of limitations starts on March 25, 2018 (i.e., treating the date of the original Complaint as the date that the clock stops for all participants);

4.  The Notice should be modified to reflect that the class is limited to individuals that worked at the North County Correctional Facility who worked over 40 hours in a workweek for the County of Los Angeles three years before the date that the Notice is sent plus the tolling period.

5.  The parties are ordered to submit a new proposed notice of action form conforming to this order within seven (7) days of this order; and

6.  The parties are ordered to meet and confer regarding a new proposed scheduling order for this case and submit a new proposed schedule within twenty-one (21) days of this order.

**IT IS SO ORDERED.**

Dated: July 3, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

16